Matthias, J.
 

 It is contended by counsel for plaintiff in error, (1) That the Public Utilities Commission is without authority to deny its application to operate a motortruck service in interstate commerce, on the route applied for upon the ground that the highway over which it seeks to operate is so badly congested that the maintenance of the proposed motortruck serv
 
 *376
 
 ice by the applicant would create an excessive and undue hazard to the safety and security of the traveling public and to the property upon such highway; and (2) that if the Public Utilities Commission does have such power the record in this case does not disclose sufficient facts to warrant-its finding and order and that therefore the same is unlawful and unreasonable.
 

 The action of the Public Utilities Commission in this case was based upon the provisions of Sections 614-86 to 614-102, General Code, which confer upon such commission authority to supervise and regulate motor transportation companies and facilities, including the operations of interstate companies within the state, “in so far as the same may be permitted under the provisions of the constitution of the United States and the acts of congress.” Section 614-101, General Code.
 

 It is well settled that in the absence of national legislation especially covering the subject of interstate commerce the state may prescribe uniform regulations adapted to promote safety upon its highways and conservation of its highways; the same being applicable alike to interstate and local commerce.
 
 Hendrick
 
 v.
 
 Maryland,
 
 235 U. S., 610, 35 S. Ct., 140, 59 L. Ed., 385;
 
 Buck
 
 v.
 
 Kuykendall, Director of Public Works,
 
 267 U. S., 307, 45 S. Ct., 324, 69 L. Ed., 623, 38 A. L. R., 286.
 

 It has been conceded by counsel for plaintiff in error that the Public Utilities Commission may, in the proper exercise of the police powers and for the promotion of the public safety and conservation of the highways, prescribe reasonable regulations for the use of the highways of the state, but it is contended that the action of the commission results in a discrimination against interstate commerce in that those engaged in the same business are subject to different restrictions, or are entitled to different privileges under the same conditions, and thereby the equal right which all can claim in the-enforcement of the law is impaired.
 

 The Supreme Court of the United States has in
 
 *377
 
 numerous decisions recognized the principle that the states have a broad discretion in the exercise of their power of regulation. The case of
 
 Hendrick
 
 v.
 
 Maryland, supra,
 
 involved the question of the authority of a state to regulate vehicle transportation over its highways. In that case the court recognized the fact that the movement of motor vehicles over the highways is attended by constant and serious danger to the public, and is also abnormally destructive to the ways themselves, and held that: “In the absence of national legislation covering the subject, a State may rightfully prescribe uniform regulations necessary for public safety and order in respect to the operation upon its highways of all motor vehicles — those moving in interstate commerce as well as others.” The regulation there involved was the registration of vehicles and the licensing of drivers, which the court held to be an exercise of the police power, uniformly recognized as belonging to the states and essential to the preservation of the health, comfort and safety of all their citizens, and as not constituting a direct and material burden on interstate commerce. Numerous cases supporting the decision are there cited. In the course of the opinion it was announced that: “The reasonableness of the state’s action is always subject to inquiry in so far as it affects interstate commerce, and in that regard it is likewise subordinate to the will of Congress.” Similarly it was held in the case of
 
 Smith
 
 v.
 
 Cahoon, Sheriff,
 
 283 U. S., 553, 51 S. Ct., 582, 75 L. Ed., 1264, that: “The constitutional guaranty of equal protection of the laws is interposed against discriminations that are entirely arbitrary. In determining what is within the range of discretion and what is arbitrary, regard must be had to the particular subject of the state’s action.” This case involved the constitutionality of a statute regulating motor vehicle operations. In the course of the opinion it was said by Chief Justice Hughes: “This is a matter of
 
 *378
 
 grave concern as the highways become increasingly crowded with motor vehicles, and we entertain no donbt of the power of the state to insist upon suitable protection for the public against injuries through the operations on its highways of carriers for hire.”
 

 The Supreme Court has not determined whether interstate commerce may be excluded from certain highways and routed over others to avoid unreasonable congestion of the highways and increased hazard to the public. However, it did hold in the case of
 
 Morris
 
 v.
 
 Duby,
 
 274 U. S., 135, 47 S. Ct., 548, 71 L. Ed., 966, that: “In the absence of national legislation especially covering the subject of interstate commerce, the State may rightly prescribe uniform regulations adapted to promote safety upon its highways and the conservation of their use, applicable alike to vehicles moving in interstate commerce and those of its own citizens.” That case followed the case of
 
 Buck
 
 v.
 
 Kuykendall, supra,
 
 in holding that the state may not discriminate against interstate commerce, and quoted from the
 
 Kuykendall case,
 
 at page 315 of 267 U. S., 45 S. Ct., 324, 69 L. Ed., 623, 38 A. L. R, 286, as follows: “With the increase in number and size of the vehicles used upon a highway, both the danger and the wear and tear grow. To exclude unnecessary vehicles— particularly the large ones commonly used by carriers for hire — promotes both safety and economy. State regulation of that character is valid even as applied to interstate commerce, in the absence of legislation by Congress which deals specifically with the subject.”
 

 It has been suggested that any regulation which attempts to preclude only motor vehicles operating for hire from operating over certain streets or highways is unenforceable because discriminatory, but as well said by Sutherland, J., in
 
 Packard
 
 v.
 
 Banton,
 
 264 U. S., 140, 144, 44 S. Ct., 257, 259, 68 L. Ed., 596: “If the State determines that the use of streets for private purposes in the usual and ordinary manner shall be
 
 *379
 
 preferred over their use by common carriers for hire, there is nothing in the Fourteenth Amendment to prevent. The streets belong to the public and are primarily for the use of the public in the ordinary way. Their use for the purposes of gain is special and extraordinary and, generally at least, may be prohibited or conditioned as the legislature deems proper.”
 

 In dealing with this same proposition as applied to interstate commerce, in the recent case of
 
 Phillips
 
 v.
 
 Moulton,
 
 (D. C.), 54 F.(2d), 119, 121, the court, citing
 
 Buck
 
 v.
 
 Kuykendall, supra,
 
 and other cases, announced the following conclusion: “The assertion of authority by the state is prompted by local traffic conditions and in the interests of public convenience. "While neither the state nor municipal authorities could, in furtherance of such a purpose, bar the entrance and exit from the city of complainants’ vehicles, nor could they impose conditions as to routes and termini so exacting as to destroy the complainants’ business, they may in furtherance of such an end impose regulations which are reasonable. * * * Such regulations, though they may entail some degree of inconvenience or interference, will not be regarded as a direct and unlawful burden upon interstate commerce. The reasonableness of such regulations, as applied to motor vehicles, must be judged with a proper regard to the safety and convenience of the public, in view of local conditions on the one hand, and the necessities of those engaged in interstate transportation upon the other.”
 

 The Public Utilities Commission does not preclude operation by the plaintiff in error over our state highways, but directs operation over a route which will result in diverting the proposed increased traffic from a highway now found to be overburdened. The record does not disclose that the order of the commission will result in the prohibition of the business of one engaged in interstate commerce, nor even that it will cause sub
 
 *380
 
 stantial interference therewith. The action of the commission is not shown to have been arbitrary or unreasonable, nor does it appear from the record that the carrier may not as well operate between the desired termini over another highway which is not so congested as to have become unduly hazardous.
 

 We cannot concur in the theory of counsel for the plaintiff in error that such action is discriminatory against interstate commerce unless the restriction be made applicable to other motor transportation companies, no matter when certified or how long in operation, and they also be re-routed over another line of travel. The record discloses that other applicants for interstate operation over said route, having been refused, have been granted such certificates covering an amended route. It is apparent that the same ruling is now intended to govern subsequent applicants, whether the proposed operation is interstate or intrastate. The view that such restrictions may be imposed finds support in the decisions of the Supreme Courts of New Jersey and Florida:
 
 People’s Rapid Transit Co.
 
 v.
 
 Atlantic City,
 
 105 N. J. Law, 286, 144 A., 630;
 
 Florida Motor Lines, Inc.,
 
 v.
 
 State Railroad Commission,
 
 101 Fla., 1018, 132 So., 851. The restriction involved in the instant case comes within the rule stated in the foregoing cases and conforms to the decision of this court in
 
 Cannon Ball Transportation Co.
 
 v.
 
 Public Utilities Commission,
 
 113 Ohio St., 565, 149 N. E., 713. It is not an infringement upon or impairment of any right secured by either the state or Federal Constitution.
 

 It is contended further that the facts disclosed by the record do not warrant the conclusion of the commission that state route No. 2 is so badly congested as to endanger public safety and the conservation of that highway. The record contains ample evidence covering the traffic conditions upon the highway in question to fully warrant the conclusion that additional motor-
 
 *381
 
 truck service would create and maintain an excessive and undue hazard to the safety and security of the traveling public and to the property upon such highways.
 

 The finding and order of the commission, being neither unlawful nor unreasonable, is affirmed.
 

 Order affirmed.
 

 Jones, Day, Allen, Kinkade and Stephenson, JJ., concur.
 

 Marshall, C. J., concurs in propositions 1, 2 and 3 of the syllabus and in the judgment.