MONTALVO, Appellee,

v.

AIR TRANSPORT INTERNATIONAL, INC., Appellant;
Devery, Acting Admr., et al., Appellees.

[Cite as *Montalvo v. Air Transport Internatl., Inc.* (1996), 115 Ohio App.3d 682.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

No. L–96–011.

Decided Nov. 22, 1996.

*Michael Courtney*, for appellee Louise Montalvo.

*David L. Eidelberg*, for appellant.

*Betty D. Montgomery*, Attorney General, and *Constance A. Snyder*, Assistant Attorney General, for appellees Sandra H. Devery and Industrial Commission of Ohio.

---

*Per Curiam.*

This case is before the court on appeal from a judgment of the Lucas County Court of Common Pleas affirming the order of the staff hearing officer that plaintiff-appellee, Louise Montalvo, is entitled to participate in the Ohio Workers'

Compensation Fund. In particular, the trial court granted the summary judgment motion of defendants-appellees, Sandra H. Devery, Acting Administrator, Bureau of Workers' Compensation, and the Industrial Commission of Ohio, and denied the summary judgment motion of defendant-appellant, Air Transport International, Inc. ("ATI"). ATI now appeals, raising the following assignment of error:

"The trial court erred when it granted summary judgment in favor of appellees and overruled the motion for summary judgment of appellant Air Transport International, Inc."

The relevant undisputed facts of this case are as follows. On February 15, 1992, Jose Montalvo was killed when ATI's Flight 805, upon which Montalvo was the flight engineer, crashed on its final approach for landing at the Toledo Express Airport. Subsequently, Louise Montalvo, Jose's widow, filed a claim for benefits under the Ohio workers' compensation system. Initially, Montalvo's application for benefits was denied. In an appeal to the district hearing officer, however, the original disallowance was reversed and the claim was allowed. ATI appealed that decision to the staff hearing officer, who, in a decision dated September 13, 1994, affirmed the order of the district hearing officer. From that decision, ATI filed an appeal with the Industrial Commission of Ohio, which, in an order dated October 20, 1994, refused to hear the appeal. From that refusal, appellant filed a notice of appeal with the Lucas County Court of Common Pleas pursuant to R.C. 4123.512.

In the court below, both ATI and the Administrator filed motions for summary judgment. The evidence submitted in support of those motions reveals the following undisputed facts. The affidavit and supporting exhibits of Charles Adami, Vice President of ATI, state that ATI is a corporation incorporated under the laws of the state of Arkansas, with its principal place of business in Little Rock, Arkansas. ATI contracts with air cargo companies for the interstate transportation of goods. ATI does not engage in any intrastate transportation of goods in Ohio. Jose Montalvo was employed by ATI as a flight engineer. Although Montalvo lived in Ypsilanti, Michigan, he entered into his employment agreement with ATI in the state of Arkansas, his wages were paid from Arkansas, he paid Arkansas income taxes and he was covered by Arkansas workers' compensation insurance. From August 1989, when he was hired by ATI, until February 15, 1992, he reported to work at the Toledo Express Airport in Lucas County, Ohio, to crew on flights operated by Burlington Airlines, which contracted with ATI for services. He did, however, receive his flight instructions from ATI in Arkansas. Montalvo's flight itinerary lists all of the flights on which Montalvo crewed during his employment with ATI. Despite evidence that Montalvo reported to work in Toledo, however, the itinerary reveals that the

majority of the flights on which Montalvo worked were not connected to Ohio. A second Adami affidavit attesting to the authenticity of the itinerary states that the itinerary shows only Montalvo's work segments and does not show any segments on which he may have been riding to arrive at his first departure location. Specifically, the itinerary indicates that during the approximately two and one-half years that Montalvo was a flight engineer for ATI, forty out of four hundred five departures (or 9.8 percent) were from Ohio and forty-three out of four hundred five arrivals (or 10.6 percent) were into Ohio. The itinerary further reveals that Montalvo was involved only in the interstate transportation of goods and was never the flight engineer on any intrastate Ohio flights. Appellees did not submit any evidence that ATI engaged in intrastate commerce in Ohio, and the Administrator concedes in her appellate brief that Montalvo was engaged solely in interstate commerce.

On February 13, 1992, Jose Montalvo and two other crew members reported for duty at Toledo Express Airport. They flew as a crew to Portland, Oregon with an intermediate stop in Seattle, Washington. They were released from duty at 11:45 a.m. on February 13, 1992. On February 15, 1992, the three men reported for duty in Portland, Oregon, to crew ATI's Flight 805, which departed from Portland, Oregon, made a stop in Seattle, Washington, and was scheduled to return to Toledo, Ohio. At approximately 3:25 a.m., during its final approach for landing, Flight 805 crashed and Jose Montalvo and the other two crew members on board were killed. After the accident, ATI applied for Arkansas death benefits on behalf of Montalvo's widow, appellee Louise Montalvo. Louise Montalvo has been and continues to be paid $238.98 per week under the Arkansas workers' compensation system.

The issues raised in the trial court in the motions for summary judgment were whether Montalvo's claim was barred by the Commerce Clause of the United States Constitution and the Supreme Court of Ohio's holding in *Spohn v. Indus. Comm.* (1941), 138 Ohio St. 42, 19 O.O. 511, 32 N.E.2d 554; whether the claim was barred by R.C. 4123.04; whether the claim was barred by R.C. 4123.54; and whether the decedent had sufficient contacts with the state of Ohio to be entitled to workers' compensation benefits. Upon consideration, the trial court granted the Administrator's summary judgment motion and denied ATI's summary judgment motion. Specifically, the court concluded that as a matter of law, Montalvo's claim was not barred by R.C. 4123.04 or 4123.54, that the decedent had sufficient contacts with the state of Ohio to give Ohio jurisdiction over the claim, and that the claim was not precluded by the Commerce Clause. The court did not, however, address the applicability of *Spohn.* It is from that judgment that ATI now appeals.

In support of its assignment of error, appellant asserts that Montalvo's claim is barred by *Spohn* because the decedent was engaged exclusively in interstate commerce and is barred by R.C. 4123.04 and 4123.54, and that the decedent had insufficient contacts with the state of Ohio. ATI therefore contends that Louise Montalvo is not entitled to benefits under the workers' compensation laws of Ohio.

■ In reviewing a ruling on a summary judgment motion, this court must apply the same standard as the trial court. *Lorain Natl. Bank v. Saratoga Apts.* (1989), 61 Ohio App.3d 127, 129, 572 N.E.2d 198, 199. Summary judgment will be granted when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C).

■ We will first address appellant's argument that pursuant to the Supreme Court of Ohio's holding in *Spohn*, Montalvo is not entitled to participate in the Ohio workers' compensation system. In *Spohn* the court interpreted Ohio's workers' compensation laws as they apply to solely interstate commerce as follows:

"We do not consider a workman employed in interstate commerce only, under a contract made outside the state of Ohio with a nonresident employer, an Ohio workman within the contemplation of the Ohio Workmen's Compensation Act." *Id.* at 50, 19 O.O. at 515, 32 N.E.2d at 557.

*Spohn* involved a claimant who resided in Fremont, Ohio, and was employed by a Michigan corporation with its principal offices in Detroit, Michigan. The employment contract was entered into in Michigan and the claimant underwent pre-hire testing to determine his qualifications for the job in Michigan. The employer operated a transit company that confined its trucking operations in Ohio to interstate commerce, although the claimant often began or ended his routes in Ohio. That is, he would often "relieve a truck driver at Fremont who was operating a truck from Detroit bound for Pittsburgh, or from Pittsburgh to Detroit." *Id.* at 43, 19 O.O. at 512, 32 N.E.2d at 555. One day, while boarding a truck in Fremont in order to drive the truck to Detroit, the claimant was struck by a passing vehicle and injured. The Supreme Court of Ohio held:

"A resident of Ohio who enters into a contract of employment in the state of Michigan with a Michigan corporation to perform services in interstate commerce *only*, is not entitled to participate in the Ohio State Insurance Fund (workmen's compensation fund) on account of an injury received in Ohio and arising out of such interstate employment." (Emphasis *sic*.) *Id.* at the syllabus.

In so holding, the court reasoned that where the claimant's employment in Ohio is only transitory, and the claimant's work is not confined to a single state but is to be performed in interstate commerce, the state in which the employment contract is entered into should control the claimant's right to workers' compensation benefits.

*Spohn* was subsequently limited by *Holly v. Indus. Comm.* (1943), 142 Ohio St. 79, 26 O.O. 261, 50 N.E.2d 152. In *Holly,* the employee was a Pennsylvania resident who entered into an employment contract with a Pennsylvania corporation that had its principal place of business in Pennsylvania. The employer, however, maintained an operation in Ohio and engaged in both interstate and intrastate commerce. The employee was killed in Ohio while engaged solely in interstate commerce. The Supreme Court of Ohio concluded that because the employer was engaged in both interstate and intrastate commerce in Ohio, the employee was covered under the Ohio workers' compensation laws. Accordingly, although *Holly* limited the *Spohn* holding in cases involving interstate *and* intrastate commerce, it did not modify the prohibition on coverage for nonresident employees who are employed by nonresident employers and engaged solely in interstate commerce.

The Administrator contends that although *Spohn* has not been overturned, it is outdated and has not been followed in more recent cases. The cases cited by appellees, however, are all distinguishable. None involve a nonresident employer, a nonresident employee and strictly interstate commerce. Rather, the holding in *Spohn* has most recently been noted by this court in *Dotson v. Com Trans, Inc.* (1991), 76 Ohio App.3d 98, 601 N.E.2d 126. Although *Dotson* involved a different factual situation, this court noted that under *Spohn,* "an employee could not recover Ohio workers' compensation benefits when the employee was exclusively involved in interstate commerce despite the fact that the employee was a resident of Ohio." We further noted the limitation on *Spohn* created by *Holly.* As stated above, however, that limitation does not apply to the facts of this case. Finally, the Ohio Tenth District Court of Appeals has denied coverage under similar circumstances. In *Fowler v. Paschall Truck Lines, Inc.* (July 27, 1995), Franklin App. No. 94APE11–1654, unreported, 1995 WL 450185, the decedent, an Illinois resident, was a truck driver employed by a Kentucky corporation with no place of business in Ohio. The employer engaged solely in the interstate transportation of goods and the decedent was covered under the workers' compensation laws of Kentucky. The decedent was killed while unloading his tractor-trailer at a stop in Groveport, Ohio. Evidence revealed that approximately eleven percent of the total miles traveled by decedent in the ninety days prior to his death were in Ohio. The court held that the decedent's widow was not entitled to benefits under the Ohio workers' compensation system.

Although the court did not cite *Spohn,* the court relied on the undisputed facts that "at the time of his fatal accident, decedent was a resident of Illinois; that appellee was a Kentucky-based corporation with no place of business in Ohio; that decedent was not engaged in intrastate commerce in Ohio; and that appellee was licensed only to conduct interstate commerce in Ohio."

We therefore conclude that given the undisputed facts in this case, reasonable minds could only conclude that *Spohn* and its progeny preclude the claimant from receiving workers' compensation benefits under the Ohio system, and appellant's sole assignment of error is well taken.

*Judgment reversed.*

GLASSER and ABOOD, JJ., concur.

SHERCK, J., dissents.